ELIAS AUERBACH, Plaintiff, and STANLEY WALLENSTEIN, as Executor of IDA S. WALLENSTEIN, Deceased, Appellant, v WILLIAM F. BENNETT et al., Respondents.

Second Department, August 7, 1978

**APPEARANCES OF COUNSEL**

*Gold, Farrell & Marks (Martin R. Gold* and *John M. Schwartz* of counsel), for appellant.

*Kaye, Scholer, Fierman, Hays & Handler (Peter M. Fishbein, Steven J. Glassman* and *Myron Kirschbaum* of counsel), for Theodore Brophy and other, respondents.

*Morrison, Paul & Beiley (Peter H. Morrison* of counsel), for William F. Bennett, respondent.

*Dean C. Rohrer (Samuel J. Wilson* of counsel), for General Telephone & Electronics Corporation, respondent.

*Breed, Abbott & Morgan (James D. Zirin* and *George F. Vary* of counsel) and *Wilson & McIlvaine (Charles W. Boand* of counsel), for Arthur Andersen & Co., respondent.

**OPINION OF THE COURT**

HOPKINS, J. P.

Questions peculiar to corporate derivative actions are presented by this appeal. The first and fundamental question raises the standing of the appellant, Stanley Wallenstein, to take the appeal in an action in which he is not a party, although he is a stockholder in the corporation for whose benefit the action was brought by the plaintiff, Auerbach, who is also a stockholder and did not take an appeal. The second question (which arises only if Wallenstein is recognized as an appellant) enters the merits of the action and is addressed to the propriety of the determination of Special Term in granting summary judgment in favor of the respondents, defendants in the action. Special Term held that the respondents had established by affidavits and documentary evidence a complete defense to the action under the business judgment doctrine, precluding any factual issue, and that, accordingly, the complaint must be dismissed.

■ We find that Wallenstein is an aggrieved party under the statute (CPLR 5511), that he should be permitted to intervene (CPLR 1012, subd [a]), and that, therefore, he has standing to take this appeal. We disagree with the determination of Special Term on the merits and find that triable issues exist which counter the granting of summary judgment. Hence, the order of Special Term should be reversed and the motions of the respondents denied.

## I

Auerbach, a stockholder of the respondent General Telephone & Electronics Corporation (GTE), brought this derivative action in March, 1976 against the individual respondents,

who were directors of the corporation, and the respondent Arthur Andersen & Co. (Andersen), the corporation's auditor. Basically, the action sought an accounting and recovery on behalf of GTE for certain improper payments allegedly caused to have been made to foreign governmental officials and private parties between 1972 and 1976.[1] Other actions by stockholders for similar relief have been instituted,[2] among which is an action by the appellant in the Supreme Court, New York County.[3]

All of these actions were precipitated by a report of the audit committee of GTE issued in March, 1976 which found evidence that for a period of years between 1971 and 1975 GTE, or subsidiaries of GTE, had made payments abroad and within the United States constituting bribes and kickbacks, amounting to about 11 million dollars, and that the individual respondents were personally involved in certain of the transactions. In April, 1976 GTE's board of directors adopted a resolution establishing a Special Litigation Committee to deal with the derivative actions then pending. Two directors, not members of the board at the time of the making of the payments, were originally appointed to the Special Litigation Committee, and a third director was appointed subsequently.

The Special Litigation Committee retained Charles S. Desmond as its counsel and thereafter, with his assistance, investigated the facts underlying the transactions in which the payments appeared. In November, 1976 the committee rendered its report, which in substance declared: (1) that the individual respondents had acted in good faith and "with that degree of diligence, care and skill which ordinarily prudent men would exercise under similar circumstances in like positions", and that they had not personally profited; (2) that the respondent Andersen had acted in good faith and according to accepted auditing standards; (3) that the claims asserted against the respondents in the derivative actions were groundless; and (4) that, even assuming the actions were meritorious,

---

1. The complaint alleges two causes of action—the first against the directors for permitting the payments and failing to act to recover them, and the second against Andersen for failing to discover and report the payments.

2. Two actions were begun in the Federal District Courts: one by a stockholder named Limmer in the Southern District of New York, and another by a stockholder named Cramer in the Eastern District of New York. The appellant states that both actions have been dismissed because no Federal claim was presented.

3. Two other derivative actions were brought in the Supreme Court, New York County, by stockholders Back and Parkoff, respectively.

it was not in the best interests of GTE to prosecute the actions. Following this report, the respondents moved in this action brought by Auerbach for summary judgment.

## II

The respondents argued at Special Term, as they do on this appeal, that a decison made in good faith by a disinterested and independent board committee that the pursuit of a derivative action against erring directors and officers would not be in the best interests of the corporation cannot be challenged by the stockholders. Hence, the respondents contend that this rule—the business judgment doctrine—fits the circumstances of this case and that, accordingly, since the underlying facts were matters of record, summary judgment dismissing the complaint was properly granted.

Special Term, in its opinion, determined that the business judgment doctrine applied, that there was no showing by Auerbach that the Special Litigation Committee was actuated by bad faith or was subservient to the other directors and that the committee was vested with authority to review the facts and make the decision on behalf of the corporation whether the derivative actions should be continued against the respondents. For these reasons, Special Term granted the respondents' motions and dismissed the complaint.

Auerbach did not appeal Special Term's order and, indeed, refused to do so when requested by Wallenstein. Wallenstein then filed a timely notice of appeal. The respondents immediately moved to dismiss the appeal on the ground that Wallenstein was not an aggrieved party and thus was without standing to appeal. Wallenstein responded in part by cross-moving for leave to intervene in the action *nunc pro tunc* for the purpose of this appeal. We denied both motions with leave to renew on the argument of the appeal,[4] and both motions have been renewed.

The right and interest of Wallenstein in prosecuting this appeal must therefore concern us first.

## III

CPLR 5511 provides that "[a]n aggrieved party * * * may

---

4. Special Term had by this time denied intervention in this action to Parkoff, one of the stockholders who had instituted a derivative action in the Supreme Court, New York County (see n 3).

appeal from any appealable judgment or order". As Wallenstein was not a party to this action either at the time of its inception or at the time of the order of Special Term, the language of the statute would appear to exclude him from appealing. Appearances aside, the statute has not been so narrowly construed and we think the unusual facts in this case furnish grounds for not putting a cramped construction on its language.

■ We have granted appellant status to nonparties who were adversely affected by a judgment *(People v Dobbs Ferry Med. Pavillion,* 40 AD2d 324, 325, affd 33 NY2d 584). The true question is whether the nonparty may be bound by the judgment if he does not take affirmative action in the litigation to protect his rights (7 Weinstein-Korn-Miller, NY Civ Prac, par 5511.04, p 55-68; see n, 48 Col L Rev 1233). In the instance of stockholders who are striving in the name of the corporation to enforce a remedy against its officers and directors, an adverse judgment in one action obviously implicates the others.

■ A stockholder's derivative action is a class action, at least for the purposes under review *(Dresdner v Goldman Sachs Trading Corp.,* 240 App Div 242, 244; cf. *Nolen v Show-Walker Co.,* 449 F2d 506); and a judgment in one action is *res judicata* in all other actions based on the same allegations *(Dresdner v Goldman Sachs Trading Corp., supra,* p 245; McLaughlin, Capacity of Plaintiff-Stockholder to Terminate a Stockholder's Suit, 46 Yale LJ 421, 424). The interests of the stockholders and the corporation are united and when a stockholder undertakes to sue on behalf of the corporation, his action concerns the other stockholders as well. The quasi-fiduciary nature of the plaintiff stockholder's status in bringing and pursuing the action (cf. *Clarke v Greenberg,* 296 NY 146) is recognized by the class action statutes which require fair and adequate representation of the members of the class (see, e.g., CPLR 901, subd a, par 4; US Code, tit 28, Appendix, Fed Rules Civ Pro, rule 23.1; cf. *Papilsky v Berndt,* 466 F2d 251, cert den 409 US 1077; *Hornreich v Plant Ind.,* 535 F2d 550).

■ ■ A natural consequence of the nature of a plaintiff stockholder's status is the filing of an appeal where necessary to preserve the review of rulings adverse to the class *(Zuber v Allen,* 387 F2d 862; *Duncan v National Tea Co.,* 14 Ill App 2d 280; cf. *Pellegrino v Nesbit,* 203 F2d 463; *Truncale v Univeral*

*Pictures Co.,* 76 F Supp 465). If the plaintiff, on dismissal of the complaint, does not appeal, another interested stockholder may be permitted to intervene and appeal the adverse decision in the exercise of the discretion of the court. Preferably, the interested stockholder should make his application for intervention in the trial court (cf. *Albert v Salzman,* 41 AD2d 501, mot for lv to app den 33 NY2d 520; *Clark v Arizona Mut. Sav. & Loan Assn.,* 217 F 640, affd *sub nom. Farmers & Merchants Bank v Arizona Mut. Sav. & Loan Assn.,* 220 F 1, cert den 238 US 628). Intervention after final judgment is sparingly granted (cf. *Krenitsky v Ludlow Motor Co.,* 276 App Div 511, mot for lv to app dsmd 301 NY 609; Ann. 37 ALR2d 1296, 1340), but even so the power exists in the court to grant intervention whenever the circumstances justify such an exercise of discretion (CPLR 1012, subd [a]; 1013; cf. *Donovan v Atlas Corp.,* 249 App Div 115; 2 Weinstein-Korn-Miller, NY Civ Prac, par 1012.07, pp 10-157—10-158).

█ Under the unusual circumstances here, we believe that Wallenstein's application for intervention in order to perfect and argue this appeal should be granted and the respondents' motion to dismiss the appeal denied. Clearly, when Auerbach decided not to appeal, he could not be compelled to continue his action against his will. On the other hand, neither should his decision fatally cripple the other stockholders' suits pending for the same relief on behalf of the corporation. As a reluctant champion of the corporate cause, he should not be allowed to enlarge his lack of enthusiasm into an insurmountable barrier against others of the class readier to take up the cudgels. We need not at at this stage consider whether in actuality the order must be accorded that effect—that conclusion depends on whether the record here fairly represents the factual background on which the resolution of the claims of the parties must be made (cf. *Vincent v Thompson,* 50 AD2d 211; *Menendez v Saks & Co.,* 485 F2d 1355). It is enough for present purposes to take into account the potential undoing of all of the derivative actions by the order of Special Term.

Doubtless, a consolidation or joint trial of all the stockholders' actions in the State (or elsewhere, if the procedural machinery were available) predicated on the alleged wrongful payments would prevent either an unseemly race among competing stockholders or the abrupt and unreviewable ending of all the actions by an unappealed decision in one action at nisi prius. But neither the stockholder plaintiffs, the corpo-

ration, nor the defendant have found that remedy appropriate for one reason or another. In the circumstances, the intervention by Wallenstein should be permitted and his timely filing of an appeal effectuated by the hearing of argument on the merits.

Accordingly, we turn to the merits.

## IV

■ Special Term, impressed by the affidavits and documentary proof submitted by the respondents in support of their motions, concluded that the action could not succeed and granted summary judgment dismissing the complaint, on the ground that the business judgment doctrine foreclosed any action against the respondents for the making of the illegal payments. In essence, the business judgment doctrine forbids the inquiry by the courts into the soundness of the decisions made by the officers and directors in the operation of the affairs of the corporation *(Pollitz v Wabash R. R. Co.,* 207 NY 113, 124). The doctrine will not be enforced when, however, the good faith or oppressive conduct of the officers and directors is in issue *(Koral v Savory, Inc.,* 276 NY 215, 217; cf. *Barr v Wackman,* 36 NY2d 371, 381). Indeed, the doctrine may not be used to excuse acts of the officers and directors which offend public policy *(Abrams v Allen,* 297 NY 52; *Roth v Robertson,* 64 Misc 343).

In this case the report of the audit committee established prima facie payments of a very substantial amount constituting on their face evidence of kickbacks or bribes made to government officials or third parties; the report further indicated that the respondent directors had been to some extent involved in some of these payments. Though the report does not implicate these respondents as personally profiting from the transactions, nor suggest that they were motivated by any other concern than the promotion of the corporate interests, the questionable character of the payments is manifest. That a duty of investigation rested on the board of directors with respect to the transactions is likewise plain. The board undertook to discharge its duty by recognizing that the respondent directors could not participate in that investigation because of their obvious conflict of interest, and by appointing a separate committee—the Special Litigation Committee—composed of directors who were presumably independent of the remainder of the board and not charged with any responsibility for the

management of the corporation during the period in which the payments were made. Former Chief Judge DESMOND was retained as counsel to the Special Litigation Committee to consider the results of the investigation and to advise whether the respondent directors should be sued for any misconduct damaging the corporation.

The decision of the Special Litigation Committee that the best interests of the corporation would not be served by such a suit is asserted by the respondents to have been made by disinterested outside directors (not identified with management), assisted by counsel of eminent standing. Thus, the respondents argue that the contours of the business judgment doctrine have been matched by the report of the committee and no further inquiry by an aggrieved stockholder should be entertained.

The committee's decision clearly depends on the depth and amplitude of the investigation and the emphasis placed by the committee on the various factors necessarily to be considered. Those factors would include, among others, the reasons for the payments, the advantages or disadvantages accruing to the corporation by reason of the transactions, the extent of the participation or profit by the respondent directors and the loss, if any, of public confidence in the corporation which might be incurred. Moreover, the hesitancy which might arise in outside directors by their investigation of the activities of fellow directors, especially when personal liability is at stake, is a consideration of moment.[5]

■■ The business judgment doctrine should not be interpreted to stifle legitimate scrutiny by stockholders of decisions of management which, concededly, require investigation by outside directors and present ostensible situations of conflict of interest. Nor should the report of the outside directors be immune from scrutiny by an interpretation of the doctrine which compels the acceptance of the findings of the report on their face. In particular, summary judgment which ends a derivative action at the threshold, before the plaintiff has been afforded the opportunity of pretrial discovery and exami-

---

5. The dilemma of outside directors in meeting their responsibilities vis-à-vis management has been recognized by acute observers of corporate affairs (see McSweeney, Managing the Managers, pp 99-107; Brown, Putting the Corporate Board to Work; Mace, Directors: Myth and Realty; Soderquist, Toward a More Effective Corporate Board: Reexamining Roles of Outside Directors, 52 NY Univ L Rev 1341, 1363).

nation before trial, should not be the means of foreclosing a nonfrivolous action *(Lasker v Burks,* 567 F2d 1208).[6] The limitation on the use of summary judgment, that it should not be granted when the facts are peculiarly within the knowledge of the moving party, applies with special force here (see, e.g., *Terranova v Emil,* 20 NY2d 493; *Subin v Goldsmith,* 224 F2d 753; *Bernstein v Mediobanca Banca di Credito Finanziario-Societa Per Azioni,* 69 FRD 592).

Although the respondent Andersen, as auditor, is charged with duties somewhat different in scope and emphasis from those of the respondent directors, all that has been said has equal relevance to the granting of summary judgment in its favor.

■ In short, the business judgment rule should not be so rigorously applied as to cut short practically at the pleading stage an apparently legitimate inquiry into a nonfrivolous claim of wrongdoing by directors and officers on the ground that a committee of disinterested directors, acting on the advice of independent counsel, decided that the corporate interests will not be promoted by a derivative action. That is not to say that after the usual discovery and deposition stages of the action have been completed, summary judgment might not be the appropriate vehicle to terminate the action when the record shows that the disinterest of the directors was not refuted, the underlying facts were thoroughly investigated and cogent reasons existed in support of the decision of the committee.

On this record, and at this stage, we think that summary judgment should not have been granted.

---

6. *Lasker* has particular emphasis here. The Second Circuit Court of Appeals reversed a dismissal of a complaint in a derivative action brought against directors of a mutual fund. The board had appointed a committee of disinterested directors to determine whether the corporation should join the prosecution of the action. The committee retained former Chief Judge FULD as its counsel and thereafter found that the corporate interests would not be served by the action. The Court of Appeals held that the disinterested directors did not have the power to foreclose the continuance of a nonfrivolous derivative action.

The respondents point out, as a distinction from the present case, that the duties of the disinterested directors are governed by a specific statute (Investment Company Act, US Code, tit 15, § 80a-10, subd [a]), unlike the corporation before the court. We do not perceive that the fiduciary duties of the directors of a business corporation differ substantially from the duties of the directors of a mutual fund (cf. Business Corporation Law, § 717; *Kavanaugh v Kavanaugh Knitting Co.,* 226 NY 185).

## V

Accordingly, the cross motion of Wallenstein to intervene should be granted, and the motion to dismiss the appeal should be denied; on the merits, the order of Special Term should be reversed and the respondents' motions for summary judgment denied.

LATHAM, SUOZZI and RABIN, JJ., concur.

Order of the Supreme Court, Westchester County, dated May 13, 1977, reversed, on the law, with one bill of $50 costs and disbursements payable jointly by respondents, and motions for summary judgment denied.

Motion to dismiss appeal denied and cross motion by Stanley Wallenstein, as executor, etc., for leave to intervene, granted.