GEORGE BYERS, Appellant, v RAYMOND C. BAXTER et al., Defendants, and FREDERICK L. BISSINGER et al., Respondents.

First Department, June 26, 1979

APPEARANCES OF COUNSEL

*Eric L. Keisman* of counsel *(Benedict Wolf* and *Marian R. Probst* with him on the briefs; *Wolf Popper Ross Wolf & Jones,* attorneys), for appellant.

*Lawrence E. Walsh* of counsel *(Robert F. Wise, Jr., James D. Liss, William E. Jackson, Edward J. Reilly, Samuel H. Gillespie, III,* with him on the brief; *Thomas D. Kent,* attorney for Allied Chemical Corporation; *Davis Polk & Wardwell* for Charles W. Nichols, Jr., and others; *Milbank, Tweed, Hadley & McCloy* for Frederick L. Bissinger and another), respondents.

## OPINION OF THE COURT

SILVERMAN, J.

Plaintiff appeals from a judgment and order of the Supreme Court dismissing the complaint on motion. Although the memorandum decision said that the motion pursuant to CPLR 3211 is granted, we think that this was an oversight and that the court was at least also granting the motion for summary judgment under CPLR 3212.

This is a stockholders' derivative action on behalf of defendant Allied Chemical Corporation against officers and directors of Allied. Defendants moved pursuant to CPLR 3211 (subd [a], par 7), or in the alternative, for summary judgment pursuant to CPLR 3212 (subd [c]) *[sic]* "on the ground that Allied's Board of Directors has determined that this derivative suit is not in the best interests of Allied and its shareholders." The issue tendered is thus whether the action should be dismissed because of this determination by Allied's board of directors; and that is the only issue to which we shall address ourselves.

Allied is a corporation with approximately 28,500,000 shares of stock outstanding. It had net sales in 1975 of $2.33 billion. It is principally engaged in three lines of business: energy; fibers and fabricated products; and chemicals. These in turn each have many branches. The complaint alleges that among its products Allied manufactured a chemical known as Kepone which was used in the formulation of pesticide, and which was highly toxic and required special precautions for its safe

manufacture and handling; that the individual defendants "caused" Allied to discharge wastes from the manufacture of Kepone and other industrial wastes into the James River and tributaries in violation of the permit issued to Allied, presumably by Federal authorities; that in March, 1974 Allied discontinued the production of Kepone at its own plant and contracted that another corporation, Life Science Products Company, manufacture Kepone for Allied as an independent contractor; that thereafter a number of Life Science employees were found to be suffering from neurological disorders which were diagnosed as Kepone poisoning; that as a result of Allied's discharge of Kepone wastes into the James River, Kepone residues contaminated the fish, oysters, sediments and waters of the James River and Hampton Roads and their tributaries, leading to the closing of those waters by the Commonwealth of Virginia; that various lawsuits have been instituted against Allied by former employees of Life Science seeking in the aggregate $200 million for personal injuries; that Allied was indicted by a Federal Grand Jury in Richmond, Virginia, for unlawful discharges of Kepone and other industrial wastes into the James River; that Allied pleaded *nolo contendere* to the indictment and was fined $13.2 million, subsequently reduced to $5 million upon Allied's agreeing to set up an $8 million fund to assist Virginia in alleviating the problems caused by Allied's pollution of the James River; that various lawsuits seeking in the aggregate approximately $24 million were instituted against Allied by members of the seafood industry for economic loss as a result of the unlawful discharge of the Kepone wastes. The complaint further alleges that the individual defendants "knew, or should have known" that the discharges of Kepone wastes were illegal, etc., and that they failed and neglected to cause Allied to warn Life Science and its employees of the danger involved; that they caused Allied to discharge wastes, etc.; and that by reason of all these facts they have been guilty of gross negligence and misconduct. The complaint demands that defendants account to Allied for all damages sustained.

It is clear that at some point the charges and litigation with respect to Kepone became a matter of great importance and concern to Allied and its directors.

On December 23, 1976, the board of directors on the recommendation of the nonofficer directors voted to establish a special committee of nonmanagement directors to investigate

the Kepone matter and to report on it to the board. Thereafter, again on recommendation of the nonofficer directors, the board appointed the law firm of Cravath, Swaine & Moore as special counsel to the board in carrying out the Kepone investigation and the law firm of Davis, Polk & Wardwell was appointed special counsel to the nonmanagement directors in connection with the Kepone matter. The special committee and special counsel investigated the Kepone matter for nearly nine months, and finally recommended that the corporation not sue any present or former director, officer or employee of Allied. The nonmanagement directors, constituting a majority of the board, adopted this recommendation and voted that it was not in the best interests of Allied and its shareholders to seek redress against any such person and that the continuation of the proceedings in the present lawsuit was not in the best interests of the corporation, and authorized and directed counsel for Allied to seek to have these proceedings dismissed. These resolutions were subsequently reaffirmed by the full board.

■ It is established law of course that the management of the business of corporations is entrusted to its board of directors and that in general, it is for the board of directors, and not for an individual stockholder, to decide in the exercise of their honest business judgment whether a particular possible lawsuit shall or shall not be prosecuted on behalf of the corporation. (Koch v Estes, 146 Misc 249, 253, affd 240 App Div 829, affd 264 NY 480.) An exception to this rule permits the bringing by an individual stockholder of a derivative action on behalf of the corporation where the corporation is controlled by the wrongdoers or where the decision of the corporation not to sue is itself a breach of the directors' duty to the corporation, either because the decision is not an honest exercise of discretion or is so flagrant an abuse of that discretion as itself to constitute a wrong to the corporation. (Koch v Estes, supra; Barr v Wackman, 36 NY2d 371, 380; Koral v Savory, Inc., 276 NY 215, 220.)

The application of these principles and the resolution of the tension between them is frequently a delicate matter with important considerations pointing both ways. On the one hand there is the demonstrated usefulness of derivative suits as a means of enforcing the fiduciary obligations of the management of corporations, management which is frequently largely divorced from any ownership interest in the corporation. In

the present case, we have obviously a portion of Allied's business which has gone very seriously wrong with very severe consequences for Allied. On the other hand one can easily envision substantial justifiable reasons well within the permissible range of discretion of Allied's board of directors for their determination not to press these claims against present and former officers and directors. To begin with, there is the question of the merits of the lawsuit, whether this is a case in which there has been a mistake or oversight at some lower level in the corporate structure for which it would be unreasonable to hold the officers and directors personally responsible. In that connection, we note the rather conclusory nature of the allegations in the complaint as to the defendants' misconduct. There is presumably a question of whether the directors and officers can possibly respond in any significant amount for the damages here claimed. There is the disruption of the corporation's business incident to the prosecution of such claims, which must be weighed against the likelihood or unlikelihood of substantial recovery. There is of course the large expense involved in such lawsuits with the probable right of indemnification by the defendants from the corporation for their expenses, if the defendants are successful. And in the present case, there is the additional concern that claims by the corporation against its management for alleged improper conduct in the Kepone matter might prove very damaging to the corporation in the many lawsuits and legal proceedings that have been brought against the corporation by third persons and public agencies in connection with Kepone. There is the further factor that the plaintiff in the present lawsuit is apparently the holder of only 11 shares of stock out of 28,500,000, a factor which must be considered in connection with the possibility of "shareholders making reckless charges for personal gain rather than corporate benefit." *(Barr v Wackman, supra,* p 378.) As the Third Circuit United States Court of Appeals observed: "Even if a particular suit has some merit, the litigation costs and the adverse effect * * * might outweigh any potential recovery in the lawsuit. Finally, derivative actions could be brought not to remedy wrongs to the corporation, but to induce settlements beneficial to the named plaintiff or his counsel." *(Cramer v General Tel. & Electronics Corp.,* 582 F2d 259, 275.)

We think that, assuming disinterestedness and honest judgment of the nonmanagement majority of the board of

directors, the procedure followed by the board, consisting of appointing a special litigation committee of nonmanagement directors, advised by independent counsel who made a thorough investigation, is an appropriate way for the corporation to exercise its power to determine whether a lawsuit such as this, nominally on behalf of the corporation, should be pursued. Otherwise, the principle that the board of directors and not individual stockholders shall decide in the exercise of their disinterested judgment whether to prosecute a lawsuit on behalf of the corporation becomes meaningless. In that connection, we note the statement of the Court of Appeals in *Barr v Wackman (supra,* p 379): "It is not sufficient, however, merely to name a majority of the directors as parties defendant with conclusory allegations of wrongdoing or control by wrongdoers."

It does not follow, however, that the lawsuit should be dismissed at this stage. Surface formalities may be only a device for concealing the impropriety of the corporation's decision not to sue. The Court of Appeals has warned us against the grant of summary judgment in dismissing stockholders' derivative actions before plaintiff has been afforded reasonable opportunity for pretrial discovery. *(Udoff v Zipf,* 44 NY2d 117, 122.) And in a case involving the same technique of a special litigation committee advised by independent counsel, the Appellate Division for the Second Department has reversed the grant of summary judgment dismissing the action before plaintiff had had an opportunity for discovery and deposition. In *Auerbach v Bennett* (64 AD2d 98, 107-108) (appeal to the Court of Appeals pending), Justice HOPKINS speaking for the Appellate Division said:

"The committee's decision clearly depends on the depth and amplitude of the investigation and the emphasis placed by the committee on the various factors necessarily to be considered * * * Moreover, the hesitancy which might arise in outside directors by their investigation of the activities of fellow directors, especially when personal liability is at stake, is a consideration of moment.

"The business judgment doctrine should not be interpreted to stifle legitimate scrutiny by stockholders of decisions of management which, concededly, require investigation by outside directors and present ostensible situations of conflict of interest. Nor should the report of the outside directors be immune from scrutiny by an interpretation of the doctrine

which compels the acceptance of the findings of the report on their face * * *

"In short, the business judgment rule should not be so rigorously applied as to cut short practically at the pleading stage an apparently legitimate inquiry into a nonfrivolous claim of wrongdoing by directors and officers on the ground that a committee of disinterested directors, acting on the advice of independent counsel, decided that the corporate interests will not be promoted by a derivative action. That is not to say that after the usual discovery and deposition stages of the action have been completed, summary judgment might not be the appropriate vehicle to terminate the action when the record shows that the disinterest of the directors was not refuted, the underlying facts were thoroughly investigated and cogent reasons existed in support of the decision of the committee."

Like the Second Department in the *Auerbach* case *(Auerbach v Bennett, supra,* p 108), "[o]n this record, and at this stage, we think that summary judgment should not have been granted."

We think that plaintiff should be given a reasonable opportunity for disclosure proceedings as to the validity and propriety of the board of directors' resolution in determining to terminate this action.

Accordingly, we reverse the judgment appealed from and deny the motion to dismiss the complaint, without prejudice to renewal by defendants after reasonable opportunity to plaintiff to conduct disclosure proceedings within the limitations which we discuss below.

The disclosure proceedings should be limited to the purpose and issue discussed, i.e., the validity and propriety of the board of directors' resolution in determining to terminate this action and not the underlying merits as such. We are mindful also of the fact that disclosure proceedings can become extremely extensive in stockholder suits, so as to nullify a large part of the advantage that a disinterested board of directors, acting in good faith, may legitimately seek to accomplish by resolution to terminate the action. (Cf. *Greenbaum v American Metal Climax,* 27 AD2d 225, 231-232.) Accordingly, we think there should be a time limitation on this disclosure. We recognize that with the summer season coming on, it may be difficult to get lawyers and witnesses together. Accordingly, we have fixed the period until November 1, 1979 as a reason-

able period for plaintiff to conduct and complete these disclosure proceedings. Of course such a time limitation assumes that defendants will not unduly delay or obstruct such disclosure.

There is an additional problem with respect to the report of the special litigation committee and the board of directors. (It is not clear whether there were two reports, one by counsel to the special litigation committee and another by the committee to the entire board, or whether there was only one document.) It may well be that such report is protected by confidentiality. We can well understand that there may be discussions in the report, which, as in any report by attorneys to their clients appraising the strengths and weaknesses in litigated matters, could create difficulties to the client if disclosed to persons who are suing the corporation. The report has not been furnished to us and has not been seen by plaintiff. We are informed by defendants-respondents that "Allied was prepared to give plaintiff's counsel (who purports to be acting for the corporation) a copy of the Report pursuant to a confidentiality order preserving its privileged and confidential nature." While this appears to us to be a reasonable limitation, we do not now pass on the question of what should be done to preserve the confidentiality of the report. Counsel will have to make their own determination as to that with or without the aid of Special Term. We leave ourselves free to consider the disclosure or nondisclosure to plaintiff of this report and the circumstances and conditions thereof on a renewal of this motion.

The judgment of the Supreme Court, New York County (STECHER, J.), entered June 30, 1978, should be reversed, on the law and in the exercise of discretion, with costs to plaintiff, and the motion to dismiss the complaint, on the ground that the board of directors has determined that this derivative suit is not in the best interests of defendant Allied Chemical and its shareholders, should be denied without prejudice to renewal of said motion after November 1, 1979. Until December 1, 1979 (and, if defendants on or before that date renew an application for determination of the issue of the effect of the board of directors' action, until a determination of that issue), disclosure proceedings by plaintiff shall be limited to the issue of the validity and propriety of the board of directors' action in determining to ask for the dismissal of this lawsuit on the ground that the suit is not in the best interests of Allied

Chemical and its shareholders, and shall not extend to the merits of the underlying suit as such.

The appeal from the order of the Supreme Court, New York County (STECHER, J.), entered June 23, 1978, granting the motion to dismiss the complaint, should be dismissed, without costs, as subsumed in the judgment.

BIRNS, J. P., FEIN and SANDLER, JJ., concur.

Judgment, Supreme Court, New York County, entered on June 30, 1978, reversed, on the law and in the exercise of discretion and the motion to dismiss the complaint, on the ground that the board of directors has determined that this derivative suit is not in the best interests of defendant Allied Chemical and its shareholders, is denied without prejudice to renewal of said motion after November 1, 1979. Until December 1, 1979 (and, if defendants on or before that date renew an application for determination of the issue of the effect of the board of directors' action, until a determination of that issue), disclosure proceedings by plaintiff shall be limited to the issue of the validity of the board of directors' action in determining to ask for the dismissal of this lawsuit on the ground that the suit is not in the best interests of Allied Chemical and its shareholders, and shall not extend to the merits of the underlying suit as such. Appellant shall recover of respondents $75 costs and disbursements of this appeal.

Appeal from order of said court entered on June 23, 1978 dismissed, without costs and without disbursements, as subsumed in the judgment.