HERBERT J. SCHMIDT, JR., Appellant-Respondent, v MAGNETIC HEAD CORPORATION et al., Respondents-Appellants, and EDWARD W. GLEASON, Respondent.

Second Department, April 30, 1984

APPEARANCES OF COUNSEL

*Berg & Duffy (James P. Duffy, III, pro se, Walter J. Gumersell* and *Elaine B. Zapfel* of counsel), for appellant-respondent.

*Farrell, Fritz, Caemmerer, Cleary, Barnosky & Armentano, P. C. (William V. Alesi* of counsel), respondent-appellant *pro se,* and for others, respondents-appellants.

**OPINION OF THE COURT**

*Per Curiam.*

These appeals are closely related to other appeals (*Schmidt v Magnetic Head Corp.,* 97 AD2d 151 [hereinafter *Schmidt I*] and *Matter of Schmidt* [*Magnetic Head Corp.*], 97 AD2d 244 [hereinafter *Schmidt II*), both decided by this court on November 14, 1983. A summary of that litigation will provide an enlightening factual basis for review of the instant appeals.

On April 30, 1978, Herbert J. Schmidt, Jr., and his wife Barbara Schmidt, principal stockholders of MCP Corporation (hereinafter MCP), a Delaware corporation, entered into an agreement with defendant Magnetic Head Corpo-

ration (hereinafter Magnetic Head), a publicly traded New York corporation, whereby the latter acquired MCP by exchanging 47.5% of its issued stock for all of the MCP shares. As a result of this transaction, the Schmidts became the owners of 45.8% of Magnetic Head stock, the largest stockholder interest.

A shareholders' agreement was entered into on April 30, 1978, the acquisition date. Disagreements subsequently arose between the Schmidts and other members of the board of directors with respect to this agreement, particularly as to the right, if any, of the Schmidts to name a successor director in place of their prior designee who had resigned. The other members of the board refused to elect James P. Duffy, the Schmidts' new designee, and instead chose one Edward Gleason to fill the vacancy.

The Schmidts commenced an action (index No. 4823/81) against Magnetic Head and the other members of its board, requesting, among other things, specific performance, construction and reformation of the shareholders' agreement and also to compel Duffy's acceptance as a director. Alternately, they sought rescission of the agreement. The Schmidts cross-moved within the action to disqualify the law firm of Farrell, Fritz, Cleary, Barnosky and Armentano, P. C. (hereinafter Farrell, Fritz), from representing both Magnetic Head and the defendant directors.

This court, in its opinion (*Schmidt I, supra*), held that the causes of action for reformation and rescission would survive a motion to dismiss. In addition, the order of Special Term (Wager, J.), entered July 14, 1981, which denied that part of the Schmidts' cross motion which was to disqualify the law firm was affirmed.

Prior to the holding of Magnetic Head's annual meeting in October, 1981, both the board of directors, under the control of a majority led by defendant Rockwell, and the Schmidts solicited proxies. The measures proposed by the Rockwell group easily passed at the meeting; among those were the election of a slate of directors, including the board's nominee to replace the director who had resigned.

Herbert Schmidt thereafter commenced an action to annul the tabulation of the votes at the shareholders' meeting and initiated a proceeding purportedly pursuant

to section 619 of the Business Corporation Law, to set aside the election of the board of directors and to vacate the passage of amendments to the articles of incorporation authorizing the issuance of new shares. This court affirmed the order of Special Term which dismissed the complaint in the action but reversed the judgment of Special Term which had dismissed the proceeding brought pursuant to section 619 (*Schmidt II, supra*). That aspect of the proceeding as pertained to the authorization of new shares was converted into an action to determine the validity of the authorizations.

Subsequent to the October, 1981 annual meeting, the parties became involved in additional litigation, of which motions with respect thereto resulted in orders which are the subject of the instant appeals.

An action was brought (index No. 7036/82) as a purported shareholders' derivative action by Herbert Schmidt against Magnetic Head, MCP and the directors of each corporation, with the exception of his wife Barbara Schmidt. The first cause of action alleges that director Gleason was guilty of a conflict of interest and failure to exercise his business judgment in connection with a secret relationship that he had with one William Sommerfield and Perth-Am Service Corp. (hereinafter Perth-Am). It alleges that Sommerfield received over $250,000 of commissions, which included commissions for business MCP conducted with Perth-Am, that the business relationship of Gleason and Sommerfield was unknown to and not consented to by Magnetic Head and MCP, and that Gleason, as the highest and final approving authority for the awarding of commissions to MCP sales agents, had a duty to avoid undue expense to MCP. An accounting was sought of Gleason for any benefits he may have derived from the secret business relationship. The second cause of action alleges that as a result of the secret relationship and business dealings, Gleason had wasted assets of Magnetic Head and MCP. The third cause of action claims that Gleason had used the services of MCP's employees and its equipment to perform Perth-Am's obligations to others without compensating MCP and requests an accounting for this waste. The fourth cause of action alleges that by acting

as a principal in Perth-Am, Gleason competed with MCP, thus violating his duty of undivided loyalty to MCP. The fifth cause of action alleges that Gleason had engaged in self-dealing and profited personally at MCP's expense from his secret business dealings and seeks an accounting. Each of the first five causes of action asserts that, although requested to do so, the board of directors of Magnetic Head failed to take any action to compel Gleason to account for his conduct. The sixth cause of action alleges that by their refusal to investigate and take appropriate action, the boards of directors of Magnetic Head and MCP had been derelict and negligent in their duties and had failed to act in the best interests of the corporations.

Defendants Rockwell, McKinley, Oakley, M. Sprague and R. Sprague served a joint answer on behalf of themselves, Magnetic Head, and MCP. A counterclaim was also asserted by the individual defendants on behalf of the corporations, alleging that Herbert Schmidt had violated his fiduciary duties to the corporations by failing and refusing to provide the defendant directors with documentation to support his accusations, by acting solely for his personal benefit and motives, and by delegating his duties to participate in the management of the corporations' affairs.

Gleason's answer essentially follows that of the other defendants, denying the allegations that he had engaged in secret business dealings or had committed a breach of fiduciary duties and waste of corporate assets. He admits that he was one of the principals of Perth-Am from January, 1978 through April 6, 1978, but denies that he received any compensation from Perth-Am or that it had engaged in the business referred to in the complaint.

By notice of motion dated June 9, 1982, defendants moved, in the index No. 7036/82 action, for an order disqualifying the firm of Berg & Duffy, and James Duffy, individually, from representing Schmidt, individually, and on behalf of all other shareholders of Magnetic Head, claiming that Duffy had acquired a personal and proprietary interest in the subject litigation by accepting plaintiff's nomination for Magnetic Head's board of directors. The notice of motion also demanded that plaintiff produce

all memoranda, correspondence and agreements relating to any understanding between plaintiff and Duffy regarding his designation and/or nomination as a director of Magnetic Head and/or his designation as a proxy holder. While a decision on this motion was pending, plaintiff moved for an order disqualifying Farrell, Fritz from representing both the defendant corporations and the defendant directors in the same action on the ground that the corporations and directors were active participants in the litigation with conflicting interests.

Both motions were decided on September 27, 1982. Special Term (Morrison, J.), ruled that a hearing was necessary to determine whether Duffy had violated the Code of Professional Responsibility and granted plaintiff's motion to the extent of disqualifying Farrell, Fritz from representing the corporate defendants, holding that the assertion by Magnetic Head of a counterclaim made active participants of those defendants.

By notice of motion dated October 15, 1982, plaintiff moved in the index No. 4823/81 action for an order disqualifying Farrell, Fritz from representing both the corporate defendant and the defendant directors on the same grounds advanced in his motion for this relief in the shareholders' derivative action. In an affidavit in opposition, defendants noted, among other things, that the relief requested had previously been denied by Justice Wager and that plaintiff's appeal of that order was still pending.

During the pendency of this motion and still prior to a hearing being held on defendants' motion to disqualify Duffy and his firm in the shareholders' derivative (index No. 7036/82) action, four more motions were brought by the litigants. By notice of motion dated October 21, 1982, plaintiff moved for an order disqualifying Farrell, Fritz from representing the noncorporate defendants in the derivative action on the ground that the firm had been disqualified from representing the corporate defendants. Plaintiff further alleged that in connection with that representation, Farrell, Fritz had had access to privileged and confidential information of the corporate defendants, including information subject to the attorney/client privilege, and that it could not otherwise have received that

information had its representation been confined solely to the noncorporate defendants. By notice of motion, also dated October 21, 1982, defendants moved for reargument of plaintiff's motion to disqualify Farrell, Fritz from representing the corporate and noncorporate defendants in the derivative action and to vacate Justice Morrison's order dated September 27, 1982, which had required independent counsel to appear for the corporate defendants.

The defendant directors moved by notice of motion dated October 29, 1982, for summary judgment dismissing the shareholders' derivative action as against them. The final motion at issue on these appeals is that of defendants which sought to disqualify Berg & Duffy from continuing to represent plaintiff in the action seeking specific performance, etc., of the shareholders' agreement.

On December 20 and 21, 1982, a hearing was held with respect to defendants' motion to disqualify Duffy (and his firm) in the shareholders' derivative action. The corporations were not represented at the hearing. On December 22, 1982, during a colloquy which took place in court after the parties had rested at the hearing, Justice Kelly ruled as a matter of law that Duffy's representation of plaintiff was violative of DR 5-103 of the Code of Professional Responsibility.

One day later, Schmidt requested by letter that Duffy withdraw his consent to serve as one of Schmidt's nominees on the board of directors of Magnetic Head. By letters dated that same day, Duffy informed Schmidt of his withdrawal as requested and also notified the Securities and Exchange Commission of this action.

By order dated January 7, 1983, Special Term (Kelly, J.), disqualified Duffy and his firm from further representation of Schmidt in the shareholders' derivative action. In that same action, by order dated February 18, 1983, Special Term (Morrison, J.), *inter alia:* (1) denied defendants' application for summary judgment; (2) granted defendants' motion for reargument of the court's earlier determination that it was inappropriate for Farrell, Fritz to represent both the corporate and noncorporate defendants, vacated that determination and denied plaintiff's original motion, stating that it had been unaware of Justice Wager's order

denying disqualification in the related action; (3) denied plaintiff's application to disqualify Farrell, Fritz from further representation of the noncorporate defendants; and (4) denied plaintiff's application to stay the hearing previously ordered by the court as moot since the hearing had been held before Justice Kelly and plaintiff's counsel had been disqualified. In the action seeking specific performance of the shareholders' agreement, Special Term: (1) denied plaintiff's application to disqualify Farrell, Fritz from further representation of the corporate and individual defendants, noting that a prior application for the same relief had resulted in an adverse determination by Justice Wager which was being appealed; and (2) granted defendants' motion to disqualify plaintiff's counsel from further representation of him, based upon the findings and determinations of Justice Kelly.

■ We find that Special Term correctly disqualified James Duffy and his firm from further representation of Schmidt in the derivative action because of their violation of DR 5-103 (A) of the Code of Professional Responsibility, based upon its finding that Duffy had acquired a proprietary interest in the cause of action and subject matter of the litigation. DR 5-103 (A) prohibits such an acquisition except in two inapplicable instances.

As asserted by defendants, Duffy sought to become a director of Magnetic Head, first by attempting to have his designation recognized, and then by participating in a proxy contest seeking his election. The testimony at the hearing clearly indicated that one may reap direct financial benefits from being a director of Magnetic Head, to wit, annual fees of some $4,500 for attendance at all board meetings, although Duffy minimized the amount of such fees as compared to the fees he receives from his law practice.

Examination of certain ethical considerations of the Code of Professional Responsibility is helpful. Ethical Consideration 5-1 provides, in pertinent part, that, "[t]he professional judgment of a lawyer should be exercised * * * solely for the benefit of his client and free of compromising influences and loyalties" (Code of Professional Responsibility, EC 5-1). Ethical Consideration 5-3 states, in relevant

part, that "a lawyer should not acquire property rights that would adversely affect his professional judgment in the representation of his client" (Code of Professional Responsibility, EC 5-3). It is questionable whether Duffy could have exercised undivided loyalty on behalf of his client inasmuch as that client in the shareholders' derivative action is the corporation, as purportedly represented by plaintiff. It is apparent, at least from the results of the proxy contest, that not all the other stockholders of this client share the same confidence in Duffy as does plaintiff.

Disciplinary rules are not to be mechanically applied in considering motions to disqualify counsel (*United States ex rel. Sheldon Elec. Co. v Blackhawk Heating & Plumbing Co.,* 423 F Supp 486), nor will a violation of professional ethics automatically result in disqualification (*Grant Co. v Haines,* 531 F2d 671, 677). However, the Court of Appeals has noted that "with rare and conditional exceptions, the lawyer may not place himself in a position where a conflicting interest may, even inadvertently, affect, or give the appearance of affecting, the obligations of the professional relationship" (*Matter of Kelly,* 23 NY2d 368, 376). Duffy's acquisition of the proprietary interest at bar could well have given such an appearance, especially as Schmidt, to whom Duffy apparently owes his allegiance, is but a nominal plaintiff.

The disqualification of an attorney is a matter which rests within the sound discretion of the court and will not be overturned absent a showing of abuse (*Grant Co. v Haines, supra*). That discretion was not improperly exercised by Special Term since, in a disqualification situation, any doubt is to be resolved in favor of disqualification (*Hull v Celanese Corp.,* 513 F2d 568, 571; *Glueck v Jonathan Logan, Inc.,* 512 F Supp 223, 228, affd 653 F2d 746; cf. *Narel Apparel v American Utex Int.,* 92 AD2d 913, 914).

We also find that the issue of whether Duffy had a proprietary interest was not moot. Although, before an order of disqualification was signed or entered, and in response to defendants' notice to produce contained within their notice of motion (to disqualify), dated June 9, 1982, Duffy had submitted a letter which indicated that plaintiff revoked his designation of Duffy as a proxy holder and as a

designated director on the Magnetic Head board, this withdrawal was dated one day after Special Term's oral decision and two days after the hearing had concluded. Neither Duffy's letter of resignation in all the capacities requested nor a copy of his letter to the Securities and Exchange Commission advising it of these developments was in the record when Justice Kelly read his decision in open court on December 22, 1982. Special Term had thus correctly determined that the disciplinary rules had been violated prior to the submission of Duffy's withdrawal.

■ We find that Special Term erred in vacating the order dated September 27, 1982, which had disqualified Farrell, Fritz from representing both the corporate and individual defendants. Special Term relied upon Justice Wager's order in the shareholders' derivative action in vacating its prior order. Justice Wager's order, the appeal of which was then still pending, stated that "no separate appearance and answer is required by the defendant corporation since the corporation is merely a passive litigant in this dispute between shareholders involving an interpretation of the shareholders agreement (cf. *Russo v Zaharko,* 53 AD2d 663, 385 N.Y.S. 2d 105)". In our opinion in *Schmidt I* (97 AD2d 151, 163, *supra*), affirming this order, we stated that: "Unlike a derivative suit, where an adverse interest generally exists between a corporation and its directors (see, e.g., Patton, Disqualification of Corporate Counsel in Derivative Actions: Jacuzzi and the Inadequacy of Dual Representation, 31 Hast LJ 347; Note, Independent Representation for Corporate Defendants in Derivative Suits, 74 Yale LJ 524), Magnetic Head's current posture is that of a passive litigant in an action involving the rights of competing stockholder factions to select a corporate director (cf. *Garlen v Green Mansions,* 9 AD2d 760). There is no allegation that Magnetic Head will benefit or suffer from the outcome of this lawsuit and matters of corporate policy are not in issue."

In the case cited by Justice Wager, this court stated that "[a]lthough in a derivative action the corporation is usually a passive litigant, in particular cases the relief sought may require an appearance and answer by the corporate defendant. Such appearance must be by [an] independent

counsel whose interests will not conflict with those of the individual defendants" (*Russo v Zaharko,* 53 AD2d 663, 666). The shareholders' derivative action at bar is such a case.

The defendant corporations have not only answered the complaint but have also asserted a counterclaim against plaintiff. As noted by plaintiff, the corporations also have the right to assert claims and cross claims against the individual defendant directors. They have not done so and, presumably, the attorneys for the corporations would not recommend such action as they are also the attorneys for the defendant directors. Thus, there is a clear potential conflict between the interests of the corporations and those of the individual defendants, notwithstanding the practical problems which might be encountered as a result of ordering disqualifications (see *Haenel v Epstein,* 88 AD2d 652).

In addition, the conflict becomes even clearer in light of the motion to dismiss the sixth cause of action as against the individual directors. As was conceded by Farrell, Fritz in an affidavit, there was no basis for any summary judgment motion to dismiss the cause of action as against director Edward Gleason. Thus, the other defendant directors essentially concede that there may be some basis to the action against Gleason. Therefore, there may be merit to a claim that these individual directors should have investigated plaintiff's charges against Gleason and that by not doing so, they did not have the corporations' interests at heart (see *MacKay v Pierce,* 86 AD2d 655; see, also, *Lewis v Shaffer Stores Co.,* 218 F Supp 238; *Messing v FDI, Inc.,* 439 F Supp 776, 782).

■ We find that Special Term also erred in not disqualifying Farrell, Fritz from representing the noncorporate defendants in the derivative action and in finding that the firm would not necessarily give an unfair advantage to the individual defendants in the prosecution of the action. Plaintiff averred in his affidavit in support of the motion that the firm which acts as general counsel to the corporations had also assisted in their defense by communicating with Farrell, Fritz, which had deemed such communications privileged. It was asserted that Farrell, Fritz had access to·the thoughts, ideas and strategy of that general

counsel and could use such information to defend the individual directors from corporate claims. As was also noted by plaintiff, the deposition of Daniel Gersen of that general counsel firm indicates that his firm had given substantial care and attention to the day-to-day progress of the litigation and had prepared various memoranda regarding the litigation between the parties. Plaintiff claimed that as the firm was general counsel to the corporations, all of its input supported the corporations' position. During Gersen's deposition, the substance of the communications and documents was claimed to be privileged and plaintiff maintains that Farrell, Fritz therefore has had access to the corporations' privileged communications which would give the individual defendants an undue advantage over plaintiff, Gleason and the corporations.

Canon 4 of the Code of Professional Responsibility states that "[a] Lawyer Should Preserve the Confidences and Secrets of a Client". We note that the proponent of a disqualification motion has the burden of showing that an attorney's prior involvement is such that he was likely to have come across relevant, privileged information (*Government of India v Cook Inds.*, 569 F2d 737). While the involvement at bar was ongoing, rather than concluded, plaintiff has met that burden, especially in light of Farrell, Fritz' close working relationship with the corporations' general counsel. Where an attorney is potentially in a position to use privileged information obtained during his prior representation of the party moving for his disqualification, his continued participation would violate the Code of Professional Responsibility (*United States v Ostrer*, 597 F2d 337, 339-340; see, also, *Tinkle v Ravena Dev. Corp.*, 60 AD2d 697; *Rappaport v Blank*, 74 AD2d 745, app dsmd 50 NY2d 879). In the instant matter, the party moving to disqualify the attorneys is, of course, not the party which had been formerly represented — the corporate defendant(s). However, as this is a derivative action, the corporate and noncorporate defendants may be viewed as adverse, and plaintiff, moving to disqualify Farrell, Fritz, purportedly represents the corporate interests. Although there may be an inference that an attorney has knowledge of the confidences and secrets of his firm's clients, that

inference is rebuttable (*Silver Chrysler Plymouth v Chrysler Motors Corp.*, 518 F2d 751, 754, overruled on other grounds *Armstrong v McAlpin,* 625 F2d 433, 440). Defendants have failed to rebut the presumption at bar.

■ Special Term correctly denied the cross motion for summary judgment to dismiss the sixth cause of action in the shareholders' derivative action as against all the defendant directors other than Gleason. That cause of action, asserting that the directors should be responsible for failure to investigate the charges against Gleason, but lacking any claim that they had engaged in any self-dealing, fraud or the like, is not deficient as a matter of law.

It is well settled that directors stand in a fiduciary relationship to their corporation (*Pepper v Litton,* 308 US 295, 306), and they are presumed to act honestly (*Clifford v Metropolitan Life Ins. Co.,* 264 App Div 168, 170). Minority shareholders cannot interfere with the management of a corporation so long as those in control are acting honestly and within their discretionary powers (*Burden v Burden,* 159 NY 287, 308). They may not seek to substitute their judgment or that of the court for the judgment of the directors (see *Kalmanash v Smith,* 291 NY 142, 155).

If directors act "in accordance with their best business judgment [they] sometimes properly may waive a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such right" (*Clifford v Metropolitan Life Ins. Co., supra,* p 170, citing *Corbus v Alaska Treadwell Gold Min. Co.,* 187 US 455, 463). A determination whether a corporation should seek to enforce a cause of action, potential or otherwise, in the courts is ordinarily a matter of internal management left to the discretion of the directors in the absence of instruction by vote of the shareholders (*Koral v Savory, Inc.,* 276 NY 215, 217; see, also, *Byers v Baxter,* 69 AD2d 343, 346).

It has been held, however, that an exception to the above outlined business judgment rule "permits the bringing by an individual stockholder of a derivative action on behalf of the corporation where the corporation is controlled by the wrongdoers or where the decision of the corporation not to sue is itself a breach of the directors' duty to the corporation, either because the decision is not an honest

exercise of discretion or is so flagrant an abuse of that discretion as itself to constitute a wrong to the corporation." (*Byers v Baxter, supra,* p 346.) Although courts seldom interfere to control such discretion, they may do so " 'where the directors are guilty of misconduct equivalent to a breach of trust, or where they stand in a dual relation which prevents an unprejudiced exercise of judgment.' (*United Copper Securities Co.* v. *Amalgamated Copper Co.,* 244 U. S. 261, 263.)" (*Koral v Savory, Inc., supra,* p 217.) A plaintiff stockholder can, as here, sue directors for "looking the other way and doing nothing with respect to wrongful conduct on the part of other directors" (*Gluck v Unger,* 25 Misc 2d 554, 557). Gleason admitted the underlying allegation against him that he had had a business relationship with Sommerfield and Perth-Am and only denied that this was of any detrimental consequence to Magnetic Head. An investigation by the other directors of Magnetic Head would certainly not have been unwarranted.

Where the plaintiff in a nonfrivolous derivative action has not yet been afforded the opportunity of pretrial discovery, his complaint should not be summarily dismissed on the ground that a committee of purportedly disinterested outside directors has decided that the corporate interests will not be promoted by a derivative action (*Auerbach v Bennett,* 64 AD2d 98, 108, mod on other grounds 47 NY2d 619; see, also, *Udoff v Zipf,* 44 NY2d 117, 122; *Byers v Baxter, supra,* p 349). Here, there has been no investigation by any directors, disinterested or otherwise.

Although conclusory allegations of breaches of fiduciary duty are insufficient to withstand a summary judgment motion (*Greenbaum v American Metal Climax,* 27 AD2d 225, 231-232; cf. *Cardo v Safeway Concrete Co.,* 73 AD2d 607), plaintiff has alleged that Gleason had a secret business relationship which inured to the detriment of the corporations. He set forth specific facts which were incorporated by reference in the sixth cause of action. Thus, he set forth sufficient evidentiary allegations to support the cause of action as against a summary judgment motion (cf. *Gerdes v Reynolds,* 281 NY 180, 184).

We note that plaintiff's failure to make a demand upon the defendant directors to commence an action against

Gleason is not of aid to defendants' motion. Although there is such a demand requirement prior to the commencement, by a shareholder, of a derivative action (Business Corporation Law, § 626, subd [c]), the requirement is excused when the board itself is accused of patent breach of its fiduciary duties and its members are named as defendant parties (*Barr v Wackman,* 43 AD2d 689, affd 36 NY2d 371). A futile demand is unnecessary (*Barr v Wackman,* 36 NY2d 371, 378-379, *supra; United Copper Co. v Amalgamated Copper Co.,* 244 US 261, 264; *MacKay v Pierce,* 86 AD2d 655, *supra*).

■ Finally, we turn to the motions to disqualify in the action involving the interpretation of the shareholders' agreement. Special Term correctly denied plaintiff's motion to disqualify Farrell, Fritz from representing the corporate defendants in that action. In that action, as opposed to the shareholders' derivative action, the corporations are passive and their interests not adverse to those of the defendant directors.

■ Special Term erred, however, in disqualifying Duffy (and his firm) from further representing plaintiff in the shareholders' agreement action. This decision was based upon the earlier decision in the derivative action which found that Duffy's acceptance of the nomination for the board of directors created an issue as to whether he had a proprietary interest in the subject matter of the litigation and also upon Justice Kelly's determination in that same action that Duffy had violated DR 5-103 (A).

Although there was a basis for disqualifying Duffy in the derivative action, there was no such basis to do so in the shareholders' agreement action. Duffy had withdrawn his consent to nomination before Justice Morrison handed down his consolidated order. Thus, although the issue of Duffy's proprietary interest was not moot with respect to the derivative action, inasmuch as the hearing had concluded prior to the nomination having been withdrawn, Justice Morrison erred in relying upon the earlier decision of Justice Kelly. The matter was moot with respect to the shareholders' agreement action and Special Term should have so held.

▇▇ In sum, Special Term properly disqualified James Duffy and his law firm from representing plaintiff in the shareholders' derivative action. However, Duffy and his firm should not have been disqualified in the action to interpret the shareholders' agreement. Special Term correctly denied the motion to disqualify Farrell, Fritz in that latter action but erred in failing to disqualify Farrell, Fritz from representing both the corporate and noncorporate defendants in the shareholders' derivative action. Finally, the motion of the defendant directors for summary judgment in the shareholders' derivative action as to the sixth cause of action was properly denied.

TITONE, J. P., O'CONNOR, WEINSTEIN and RUBIN, JJ., concur.

Order of the Supreme Court, Nassau County, dated January 7, 1983, affirmed insofar as appealed from, without costs or disbursements.

Order of the same court dated February 18, 1983, modified (1) by deleting therefrom the paragraph beginning with the heading "#184 (Ind. # 7036/82)" and substituting therefor a provision providing that defendants' application to reargue a prior determination of Special Term that it was inappropriate for Farrell, Fritz, Caemmerer, Cleary, Barnosky and Armentano, P. C., to continue representing both the corporate defendants and the individual defendants in the index No. 7036/82 action is denied; (2) by deleting therefrom the paragraph beginning with the heading "#186 (Ind. # 7036/82)" and substituting therefor a provision granting plaintiff's application to disqualify Farrell, Fritz, Caemmerer, Cleary, Barnosky and Armentano, P. C., from further representation of the individual defendants, Rockwell, McKinley, Oakley, M. Sprague and R. Sprague in the index No. 7036/82 action and (3) by deleting therefrom the paragraph beginning with the heading "#189 (Ind. # 4823/81)" and substituting therefor a provision providing that the defendants' application seeking to disqualify plaintiff's counsel from further representation of plaintiff in the index No. 4823/81 action is denied. As so modified, order affirmed insofar as appealed from, without costs or disbursements.