### In re PAR PHARMACEUTICAL, INC. DERIVATIVE LITIGATION.

#### No. 89 Civ. 5742 (RPP).

United States District Court, S.D. New York.

Nov. 8, 1990.

Kaufman Malchman Kaufman & Kirby by Roger W. Kirby, New York City, Greenfield & Chimicles, Haverford, Pa., Zwerling Schachter Zwerling, Law Offices of Joseph H. Weiss, New York City, for plaintiffs.

Solin & Breindel by Kenneth I. Schacter, New York City, for Par Pharmaceutical, Inc.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

This is a shareholder derivative action brought on behalf of Par Pharmaceutical, Inc. ("Par") against certain directors, officers and former officers of Par alleging violations of Sections 14 and 20 of the Securities Exchange Act of 1934, 15 U.S.C. § 78n and § 78t, and of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68, and alleging intentional and negligent breach of fiduciary duty under state law. Based on Rule 23.1 of the Federal Rules of Civil Procedure, Par has moved to dismiss the complaint against all defendants in favor of its prosecution of a state court action against certain defendants. Plaintiffs have cross-moved for discovery if the Court finds that Par has made a prima facie showing that its motion to dismiss should be granted. For the reasons set forth below, both motions are denied.

## BACKGROUND

Defendant Par is a corporation in the business of manufacturing and marketing prescription and over-the-counter oral and topical generic drugs. Par owns 60% of a subsidiary, Quad Pharmaceuticals, Inc. ("Quad"), which manufactures and markets injectable generic drugs. This action consolidates for pretrial purposes three separate shareholder derivative suits brought on behalf of Par in August 1989. The Consolidated Amended Complaint was filed on December 21, 1989. It names the following persons as "insider defendants": (1) Ashok Patel ("A. Patel"), former Senior Vice President and Secretary of Par; (2) R.K. Patel ("R.K. Patel"), former Senior Vice President and Assistant Secretary of Par; (3) Barry Geller ("Geller"), former Vice President, Regulatory Affairs; (4) Perry Levine ("P. Levine"), former President of Par; (5) Jeffrey Levine ("J. Levine"), present Executive Vice President of Par; and (6) Dilip Shah ("Shah"), former President and Chief Executive Officer of Quad. A. Patel, R.K. Patel and Geller were directors of Par until April and July of 1989. P. Levine has been a director at all relevant times and J. Levine is currently on the Par Board. The complaint also names as defendants Quad and the following present directors of Par, Jacob Robbins, Photios Paulson, Nagin Patel ("N. Patel") and Richard Nadler. Par is a nominal defendant.

Following an investigation instituted in October 1986 under the supervision of the United States Attorney, a grand jury impaneled in the District of Maryland indicted A. Patel, Par, Shah and Quad. In July of 1989, all four pled guilty to bribing officials of the federal Food and Drug Administration ("FDA") in order to obtain expedited approvals for certain generic drugs Par was to manufacture and sell (hereinafter "the bribing incidents"). In connection with Par's plea on July 19, 1989, the United States Attorney for the District of Maryland stated with respect to the other defendants in this action:

> [W]e have found no evidence that any officer, director, or employee of Par, other than Ashok Patel, participated in or was aware of any criminal conduct within the scope of this Office's investigation.

Sawyer Aff., Exh. B (Letter dated July 13, 1989). At the same time, the United States

Attorney's Office stated that it had found no evidence that any officer, director or employee of Quad other than Shah participated in or was aware of any criminal conduct within the scope of the office's investigation. Sawyer Aff., Exh. C (Letter dated July 13, 1989).

In a separate incident in July 1989 ("the switching incident"), defendant R.K. Patel switched certain product samples with those of another batch during an FDA inspection at Par's facilities. R.K. Patel has admitted to this switching and the incident forced Par to recall its generic version of the drug Maxzide and to suspend shipments of all of its products.

### 1. Plaintiffs' Claims

Plaintiffs' RICO and RICO conspiracy claims are solely against the insider defendants[1] and arise from the bribing incidents. Plaintiffs claim that from 1986 through July 1988, the insider defendants committed predicate acts of mail fraud, wire fraud, violation of the Travel Act and bribery under RICO and conspired to conduct Par's affairs through such a pattern of racketeering activity in order to further the scheme to bribe officials of the FDA. Allegedly the bribing scheme was designed in part to inflate the market value of Par stock by creating the artificial appearance that Par had special expertise in obtaining expeditious FDA approvals. Pursuant to the alleged scheme, A. Patel and Shah are claimed to have made a series of sixteen payments totalling $16,800 to two FDA employees.

Plaintiffs' securities fraud claims are interposed solely against defendants A. Patel, R.K. Patel, P. Levine and Robbins who constituted the entire Board of Directors of Par ("the Board") when the February 1987 and February 1988 proxy statements were issued.[2] Plaintiffs claim that these proxy statements were false and misleading in violation of Sections 14(a) and 20 of the '34 Act because they sought the reelection of directors without disclosing the role of three of the directors—P. Levine, A. Patel and R.K. Patel—as insider participants in the scheme underlying the bribing incidents. The February 1988 proxy statement is also alleged to have been misleading because it sought and obtained shareholder approval of an amendment to Par's Certificate of Incorporation which eliminated or substantially limited liability of the officers and directors and caused the corporation to indemnify all the individual defendants at a time when the insider directors' conduct had not yet been made public.

Plaintiffs' state law claims are brought against all defendants for negligent and intentional breach of fiduciary duties.

### 2. Demands on the Board of Directors

On November 17, 1988, counsel for two Par shareholders who are not plaintiffs in this action made a written demand upon the Board to investigate the facts underlying the grand jury investigation of the bribing incidents and to take action against the individuals at Par responsible for the wrongdoing. Par responded by letter dated December 7, 1988—before the parties had entered the guilty pleas—that it was conducting an investigation. Par did not respond to a follow-up demand letter of December 12, 1988 and in response to the demand failed to take any action.

On July 25, 1989, following the guilty pleas of A. Patel, Par, Shah and Quad, plaintiff Fred Hakim through his counsel made a separate written demand upon the Board to institute immediate legal action against, at a minimum, defendants P. Le-

---

[1]. The six insider defendants named in the consolidated complaint are Geller, J. Levine, P. Levine, A. Patel, R.K. Patel and Shah.

[2]. Par's Board was expanded in 1988 to include two outside directors (defendants Paulson and N. Patel) and three senior officers (defendants Geller, Nadler and J. Levine). A. Patel and R.K. Patel resigned from the Board in April and July 1989, respectively. Geller took a voluntary leave of absence from his position as a director in July 1989. Kenneth Sawyer, not named as a defendant in this action, became President, Chief Executive Officer and a director of Par in October 1989. At the time the present motion was brought, Par's seven-member Board comprised—apart from Sawyer—defendants J. Levine, P. Levine, Nadler, N. Patel, Paulson and Robbins.

vine, A. Patel, Nadler and Shah. Consolidated Amended Complaint, Exh. D, p. 3. Par responded to Hakim's demand on August 3,. 1989 by stating that it was making an inquiry into the allegations but again formed no special litigation committee at that time.[3]

After the disclosure of the switching incident in July 1989, the Board did form a special committee of outside directors consisting of Robbins, Paulson and N. Patel to investigate that incident. This committee retained the law firm of Weil, Gotshal & Manges as its special counsel.

### 3. The Special Litigation Committee

Plaintiffs Goodrich, Hakim and another shareholder, Joseph Farber, filed separate shareholder derivative actions on behalf of Par on August 15, 22 and 25, 1989, respectively, which were later consolidated in this action. On November 9, 1989, in response to these individual complaints, the Board of Directors of Par created a separate Special Litigation Committee consisting of directors Paulson and Sawyer. Sawyer Aff. ¶ 19. The Committee was empowered to study the question of whether Par should take over the derivative litigation but the Board retained full power to determine the company's position in this action.[4] The Special Litigation Committee did not obtain independent legal counsel but instead relied upon the firm of Solin & Breindel, attorneys for Par and its Board in this litigation. Weil, Gotshal & Manges, counsel to the earlier committee, provided the Special Litigation Committee with advice concerning its investigation of the switching incident and ancillary matters. Barton Aff. ¶ 8.

Based upon its investigation between November 1989 and January 1990, the Special Litigation Committee concluded:[5] (1) that Par should take over the derivative action as to defendants A. Patel, R.K. Patel and Shah who the Committee determined had breached fiduciary duties owed to Par; (2) that there was some evidence that defendant Geller participated in the switching incident with R.K. Patel and that J. Levine failed to report the incident when he first learned of it; (3) that there was no evidence indicating wrongdoing on the part of defendants P. Levine, Nadler, N. Patel, Paulson and Robbins involving either the bribing or switching incidents; (4) that no legitimate purpose would be served by asserting the RICO claims in part because:

[A]sserting such a claim would conflict with the legal positions taken by the Company in the class action cases pending before this Court. It would also conflict with the position the Company intends to take in an action filed against it by a competitor, Mylan Laboratories, in a civil RICO action in the United States District Court for the District of Columbia arising out of the unlawful payments scheme. In both cases, the Company has argued, or will argue, that these RICO claims do not state a cause of action. In short, the Committee's business judgment is that asserting a RICO claim is inappropriate.

Sawyer Aff. ¶ 33(c)(i); and (5) that no purpose would be served by asserting the securities claims because, in the Committee's view, they do not state claims for relief and because Par was not damaged by adoption of the director and officer indemnification amendment.

On February 2, 1990, Par's Board consisting of outside directors Robbins, Paulson and N. Patel and officer directors Na-

---

**3.** Joseph Farber, Edward Goodrich and Brocha Katzman, all plaintiffs in this consolidated derivative action, did not make demands on the Board because, in their view, the handling of the two previous demands reflected the Board's inability to properly respond and because they believed members of the Board to be biased and interested.

**4.** Par claims that under Delaware law, *see Abbey v. Computer & Communications Technology Corp.,* 457 A.2d 368, 373 (Del.Ch.1983), it would

have conceded directorial interestedness and the futility of a demand upon the Board if the Board had given the Special Litigation Committee full power to determine the company's position in the derivative action.

**5.** The record indicates that the Special Litigation Committee has not yet completed its investigation and has yet to produce a report describing its methodology, reasoning and conclusions. *See* Sawyer Aff. ¶ 21; Pl. Br. in Opp. at 6, 13.

dler and Sawyer unanimously voted to take the following actions as a matter of business judgment: [6]

(1) to immediately commence a state court action for breach of fiduciary duty against A. Patel, Shah and R.K. Patel; [7]

(2) to seek dismissal of the derivative action with prejudice as to defendants P. Levine, Nadler, N. Patel, Paulson, Robbins, Quad and Par;

(3) to seek dismissal without prejudice, or alternatively a stay, as to J. Levine and Geller pending further investigation into their actions.

Sawyer Aff. ¶ 34.

By this motion, Par seeks dismissal of the complaint in this action pursuant to the vote of the Board. Par contends that the Board's decision to seek dismissal of the pending derivative suit in favor of its commencing a state court action against defendants A. Patel, R.K. Patel and Shah is a full and adequate response to plaintiffs' November 1988 and July 1989 demands upon the Board and is fully protected by the business judgment rule. Par argues that its decision to sue two of Par's largest shareholders, A. Patel and R.K. Patel, who until 1989 were two of Par's most senior officers demonstrates the Board's good faith and its determination to remedy past wrongdoing. Plaintiffs, on the other hand, urge no deference to the Board's decision and challenge the independence of and procedures utilized by the Special Litigation Committee in reaching the findings ultimately adopted by the Board.

## DISCUSSION

The purpose of Rule 23.1 of the Federal Rules of Civil Procedure is:

... to give the derivative corporation itself the opportunity to take over a suit which was brought on its behalf in the first place, and thus to allow the directors the chance to occupy their normal status as conductors of the corporation's affairs.

*Brody v. Chemical Bank,* 517 F.2d 932, 934 (2d Cir.1975). Allowing the corporation to take over the derivative action pursuant to Rule 23.1 offers numerous practical advantages including the possibility of alternative remedies, recognition and termination of meritless actions and the ability to utilize the corporation's oft-superior financial resources and knowledge of the challenged transactions. *See Lewis v. Graves,* 701 F.2d 245, 247–48 (2d Cir.1983).

The question of whether the business judgment rule applies to the decision of a sufficiently independent and properly authorized special litigation committee to terminate the derivative action is not raised by the present motion.[8] The Par Special Litigation Committee was not given full power to determine the Company's position but was merely authorized to investigate and report to the Board. Sawyer Aff., Exh. A; *cf. Gall v. Exxon,* 418 F.Supp. 508, 517 (S.D.N.Y.1976) ("In no sense was the decision of the Special Committee not to sue merely an advisory one.... [I]n carrying out its investigation and in reaching its conclusions, the Special Committee exercised the full powers of the Board."). Rather, the issue presented here is whether the business judgment rule shields a decision by the Board itself to seek dismissal of the derivative action.

■ As a general matter, the business judgment rule, while appropriate in evaluating decisions entrusted to an independent special litigation committee, *see Rosengarten v. International Tel. & Tel. Corp.,* 466 F.Supp. 817, 822 (S.D.N.Y.1979), is too lenient a standard by which to judge the decision of a Board of Directors, a majority

---

**6.** Defendant directors J. Levine and P. Levine abstained from consideration of this matter. Sawyer Aff. ¶ 34.

**7.** Par has submitted a proposed complaint along with its papers in support of this motion.

**8.** For this reason, case law under *Auerbach v. Bennett,* 47 N.Y.2d 619, 419 N.Y.S.2d 920, 393 N.E.2d 994 (1979), in New York and under *Zapata Corp. v. Maldonado,* 430 A.2d 779 (Del. 1981), in Delaware is largely irrelevant. The scrutiny to be applied in "demand-excused" and "demand-refused" circumstances under those cases is scrutiny of the binding decision of a special litigation committee that prosecuting the derivative action would not be in the company's best interest.

of whose voting members are defendants in the federal and state claims they voted to dismiss. In this case, five directors of the seven-member Board voted unanimously to adopt the findings of the Special Litigation Committee recommending dismissal of all five counts in the complaint.[9] Four of the five—Nadler, N. Patel, Paulson and Robbins—were not completely disinterested because they are defendants in this action.[10] Even though only Robbins was charged with specific wrongdoing (Count III), this Court cannot conclude with confidence that the Board acted with the good faith and disinterestedness required to allow dismissal of this action. Indeed, the Board's decision to dismiss without prejudice claims against Geller and J. Levine whom the Special Litigation Committee had been unable to clear as well as to dismiss with prejudice all claims against the four interested voting Board members invites a certain degree of suspicion.

The question of whether the Board itself has the power as a matter of business judgment to terminate a derivative action depends on whether the claim was created by state law or by federal law. *See Galef v. Alexander*, 615 F.2d 51, 58 (2d Cir.1980). The Second Circuit's decision in *Galef* is particularly instructive as to the federal claims in this action:

> Obviously the goal of § 14(a) that communications from management be accurate and complete as to all material facts is a vital one. Its achievement would quite clearly be frustrated if a director who was made a defendant in a derivative action for providing inadequate information in connection with a proxy solicitation were permitted to cause the dismissal of that action simply on the basis

of his judgment that its pursuit was not in the best interests of the corporation. *Id.* at 63. The Second Circuit held in *Galef* that federal policy prevents summary judgment dismissing of federal claims under § 14(a) of the Securities Exchange Act of 1934 pursuant to the business judgment of nine directors of a fifteen-member board all named as defendants in the action. *Id.* at 64. Thus *Galef* precludes dismissal of plaintiffs' federal securities and RICO claims pursuant to the business judgment of a five-director voting Board which includes four defendant directors.

■ Although *Galef* did not resolve the issue of dismissal of state law claims, it seems equally clear that the business judgment rule does not protect the Board's refusal to press claims for breach of fiduciary duty where plaintiffs seek damages on those claims from four of the five voting Board members. The leading cases under state law formulate standards for judicial review based on the premise that the decision to terminate is made by a special litigation committee rather than by the board itself. *See Zapata Corp. v. Maldonado*, 430 A.2d 779 (Del.1981); *Auerbach v. Bennett*, 47 N.Y.2d 619, 419 N.Y.S.2d 920, 393 N.E.2d 994 (1979).[11]

■ The Par Board could have easily achieved a high degree of protection for the decision to terminate by delegating full power to determine the company's position to the Special Litigation Committee. If a Special Litigation Committee possessing such power and composed of disinterested directors conducts a proper and good faith review of the matters before it and reaches a business judgment that the action is not in the company's best interest, then the action should be dismissed. *See Stein v. Bailey*, 531 F.Supp. 684, 693 (S.D.N.Y.

---

**9.** The Board acted without the participation of two directors—P. Levine and J. Levine—who had recused themselves from consideration of and voting on this matter.

**10.** None of the voting directors constituted "insider defendants" identified in the complaint as responsible for the scheme to bribe FDA officials. However, plaintiffs seek damages from all the individual defendants.

**11.** The authority of a committee of disinterested directors to terminate shareholder derivative actions is a matter properly resolved by reference to the applicable state law. *See Burks v. Lasker*, 441 U.S. 471, 480, 99 S.Ct. 1831, 1838, 60 L.Ed.2d 404 (1979). Although Par is a New Jersey corporation, the parties have failed to identify any cases applying New Jersey law which are on point, so this Court must assume that a New Jersey court would most likely apply either the New York or Delaware approach.

1982) (applying Delaware law); *Maldonado v. Flynn*, 485 F.Supp. 274, 279 (S.D.N.Y. 1980) (applying Delaware law), *rev'd in part on other grounds*, 671 F.2d 729 (2d Cir.1982); *Rosengarten v. International Tel. & Tel. Corp.*, 466 F.Supp. 817, 822 (S.D.N.Y.1979) (applying New York law). However, a mere advisory role of the Special Litigation Committee fails to bestow sufficient legitimacy on the Board's decision to warrant deference to the Board by this Court. Moreover, in this Court's view the Par Special Litigation Committee procedure was flawed.

First, the Committee failed to retain independent counsel. Both New York and Delaware law contemplate that a special litigation committee be represented by independent counsel. *See Spiegel v. Buntrock*, 571 A.2d 767, 772 (Del.1990); *Kaplan v. Wyatt*, 484 A.2d 501, 511 (Del.Ch.1984), *aff'd*, 499 A.2d 1184 (Del.1985); *Byers v. Baxter*, 69 A.D.2d 343, 348, 419 N.Y.S.2d 497, 500 (App.Div.1979) ("[T]he procedure followed by the Board, consisting of appointing a special litigation committee of nonmanagement directors, advised by independent counsel who made a thorough investigation, is an appropriate way for the corporation to exercise its power to determine whether a lawsuit such as this nominally on behalf of the corporation should be pursued.").[12]

The absence of independent counsel to the Special Litigation Committee, and the attorneys' resultant conflict of interest, is most starkly reflected in the Committee's position that Par's pursuit of the RICO claims in this action would conflict with the defensive posture Par intends to take in response to the class action suit before this Court, *In re Par Pharmaceutical, Inc.*

*Sec. Litig.* ("the class action"), and another civil RICO action pending in the District of Columbia. The issue here is whether such claims are viable in this derivative action not whether they conflict with the position taken in another litigation.

In addition, the Committee has yet failed to document in any manner its procedures, reasoning or conclusions. This failure effectively insulates its investigation from scrutiny by a Court or otherwise. In *Joy v. North*, 692 F.2d 880 (2d Cir.1982), *cert. denied sub nom.*, 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983), the Second Circuit reversed an order placing the report of the special litigation committee recommending termination of the derivative suit under seal. The Court explained:

> We simply do not understand the argument that derivative actions may be routinely dismissed on the basis of secret documents. We cannot say what the effect on investor confidence would be if special litigation committees were routinely allowed to do their work in the dark of night.

*Id.* at 893. The Court further held that if the special litigation committee recommends termination and a motion for summary judgment follows, the committee must fully disclose its report and the underlying data. *Id.* In other cases, courts have refused to allow the corporation to terminate the derivative action where the special litigation committee report, though disclosed, was inadequate. *See Holmstrom v. Coastal Indus., Inc.*, 645 F.Supp. 963, 972 (N.D.Ohio 1984) (report devoid of factual findings); *Watts v. Des Moines Register & Tribune*, 525 F.Supp. 1311, 1328–29 (S.D.Iowa 1981) (postponing decision pending discovery of factors influenc-

**12.** *See also In re Consumers Power Co. Derivative Litig.*, 132 F.R.D. 455, 464–65 (E.D.Mich. 1990) ("It is true that the HMS & C firm could not serve as counsel to the Advisory [i.e., Special Litigation] Committee since they represent the defendant directors in this derivative action."); *Dalrymple v. National Bank & Trust Co.*, 615 F.Supp. 979 (W.D.Mich.1985):

> The role of the Special Litigation Committee is anomalous, as it involves an ostensibly independent investigation by directors of their colleagues' and their own, [sic] misconduct,

> assisted by an attorney selected precisely because he has no previous professional relationship with either the corporate entity or its directors. Problems of conflicting loyalties ... do not, therefore, arise.

*Id.* at 986.

The absence of independent counsel to the Par Special Litigation Committee is not cured by reason of Weil, Gotshal & Manges' participation which was limited to issues raised by the switching incident.

ing committee's decision which were not presented in report).

With these considerations in mind, Par's motion to dismiss the Consolidated Amended Complaint in this action is denied. Because plaintiffs' cross-motion for discovery is moot, it is also denied.

All counsel are to attend a pretrial conference at 9:00 A.M. on Monday, November 26, 1990 in the designated courtroom.

IT IS SO ORDERED.