**Fred SAUER, Plaintiff,**

v.

**XEROX CORPORATION, Defendant.**

**No. 95–CV–6485L.**

United States District Court,
W.D. New York.

Feb. 24, 2000.

Gordon Locke, Gordon Locke Law Offices, New Rochelle, NY, for Fred Sauer, plaintiff.

John P. Coffey, Latham & Watkins, Newark, NJ, E. Marcellus Williamson, Latham & Watkins, Washington, DC, for Xerox Corporation, defendants.

*DECISION AND ORDER*

LARIMER, Chief Judge.

## INTRODUCTION

This action arises out of a dispute over certain industrial equipment ("the equipment") between plaintiff Fred Sauer and defendant Xerox Corporation. In a letter to the court dated August 31, 1999, Xerox requested that the court issue an order disqualifying plaintiff's attorney, Gordon Locke, from continuing to represent plaintiff in this action. The basis for defendant's request was that Locke had allegedly violated Disciplinary Rules 5–103(a), which prohibits a lawyer from "acquir[ing] a proprietary interest in the cause of action or subject matter of litigation he or she is conducting for a client," and 7–104, which prohibits a lawyer from communicating directly with a party that he knows is represented by counsel without the prior consent of that party's attorney.

Pursuant to my previously-issued referral order, Magistrate Judge Jonathan W. Feldman heard oral argument on the motion to disqualify on October 28, 1999. On November 22, 1999, Magistrate Judge Feldman issued a Report and Recommendation recommending that Locke be disqualified from any further representation of plaintiff in this action. Basing that recommendation on his finding that Locke had violated DR .5–103, the Magistrate Judge found it unnecessary to reach the issue of whether Locke had also violated DR 7–104.

Plaintiff filed objections to the Report and Recommendation on December 6, 1999. This Decision and Order constitutes my ruling on those objections.

## DISCUSSION

The determination of whether a motion to disqualify an attorney is committed to the discretion of the court. *Cheng v. GAF Corp.,* 631 F.2d 1052, 1055 (2d Cir.1980), *vacated on other grounds,* 450 U.S. 903, 101 S.Ct. 1338, 67 L.Ed.2d 327 (1981). The burden is on the movant to demonstrate that an attorney should be disqualified. *Ives v. Guilford Mills, Inc.,* 3 F.Supp.2d 191, 202 (N.D.N.Y.1998); *Marshall v. State of New York Div. of State Police,* 952 F.Supp. 103, 106 (N.D.N.Y. 1997). Because motions to disqualify are generally disfavored, that burden is a heavy one, and a party moving for disqualification must satisfy "a high standard of proof." *Evans v. Artek Systems Corp.,* 715 F.2d 788, 791 (2d Cir.1983).

The primary reasons that disqualification motions are looked upon with disfavor are that "disqualification has an immediate adverse effect on the client by separating him from counsel of his choice, and that disqualification motions are often interposed for tactical reasons." *Board of Educ. of City of New York v. Nyquist,* 590 F.2d 1241, 1246 (2d Cir.1979) (citing *Allegaert v. Perot,* 565 F.2d 246, 251 (2d Cir. 1977)); *J.P. Foley & Co., Inc. v. Vanderbilt,* 523 F.2d 1357, 1360 (2d Cir.1975) (Gurfein, J., concurring). While courts will accordingly not lightly grant a motion to disqualify, however, any doubts must be resolved in favor of disqualification. *Hull*

*v. Celanese Corp.,* 513 F.2d 568, 571 (2d Cir.1975); *Felix v. Balkin,* 49 F.Supp.2d 260, 267 (S.D.N.Y.1999); *Ives,* 3 F.Supp.2d at 202. This approach strikes a balance between being "solicitous of a client's right freely to choose his counsel," and protecting the "need to maintain the highest standards of the profession" and the "integrity of the adversary process." *Evans,* 715 F.2d at 792; *Government of India v. Cook Indus., Inc.,* 569 F.2d 737, 739 (2d Cir. 1978).

In the instant case, I concur with Magistrate Judge Feldman's conclusion that Locke has violated DR 5–103(a). The record shows that during the course of this litigation, Locke and his client, Fred Sauer, entered into a written agreement ("the agreement") by which Sauer, in consideration of Locke's representation of him, stated that he "hereby sells and transfers to Locke, AS–IS, WHERE–IS, an undivided thirty three and one third percent interest in the Equipment [that is the subject of this litigation], and all net proceeds thereof, whether received or derived from the Equipment or from the assertion of any claims against Xerox or any other person or party." Affidavit of Gordon Locke (Docket Item 267) Ex. A. In addition, in a letter to Xerox dated July 14, 1999, Sauer and Locke stated, "We as the *owners* of the equipment hereby repeat the demand previously made upon you by Mr. Sauer and again make formal demand for the immediate return of *our* equipment .... " Locke Aff. Ex. B (emphasis added). The letter was signed by both Sauer and Locke.

The language of these documents could hardly make it any clearer that it was Locke's and Sauer's intention to give Locke a one-third ownership interest in the equipment, and that they believe that he is now a part owner of the equipment. Although plaintiff characterizes the agreement as essentially a contingent-fee agreement, nothing in the agreement suggests

that Locke's interest in the equipment is contingent upon anything. Obviously Locke's interest (as well as Sauer's, for that matter) is "contingent" upon the court ultimately determining that Sauer, not Xerox, is the owner of the equipment, but to contend that this makes the agreement a permissible contingency agreement would render DR 5–103 virtually meaningless in lawsuits involving disputes over ownership of property. *See Peggy Walz, Inc. v. Liz Wain, Inc.,* No. 94 CIV. 1579, 1996 WL 88556 *3 (S.D.N.Y. Mar.1, 1996) (rejecting plaintiff's counsel's contention that incorporation agreement conferring upon him a direct interest in the copyrighted designs that formed the subject matter of the action was analogous to a contingent fee arrangement).

I also reject plaintiff's contention that DR 5–103(a) is not implicated here because ownership of the equipment is not part of the subject matter of this litigation. As Magistrate Judge Feldman noted, one of my prior decisions in this case does address the issue of title, *see Sauer v. Xerox Corp.,* 17 F.Supp.2d 193, 206 (W.D.N.Y. 1998) (stating that plaintiff "has received from Xerox the full purchase price to buy back the equipment"), and plaintiff's own statement of issues to be raised on appeal from that decision [1] raises issues concerning whether defendant should be ordered to return the equipment to plaintiff, and whether defendant's payments to plaintiff fully satisfied defendant's obligations to plaintiff. *See* Defendant's Reply to Plaintiff's Objections (Docket Item 283) Ex. B ¶¶ 15, 16.

I am equally unpersuaded by plaintiff's assertion that defendant cannot carry its burden of proving a violation of DR 5–103(a) because defendant alleges in this lawsuit that Xerox, and not plaintiff, is the owner of the equipment. Plaintiff argues that defendant is in effect estopped from alleging that Locke has obtained a proper-

---

**1.** Plaintiff filed a notice of appeal from my 1998 Decision and Order, but subsequently withdrew the appeal pending resolution of defendant's counterclaims.

ty interest in the equipment, since according to defendant, plaintiff has no power to convey such an interest to Locke. That logic, too, however, would eviscerate DR 5–103(a) whenever property ownership is at issue in a lawsuit. Moreover, it puts the cart before the horse by making resolution of one of the ultimate issues in this case— ownership rights—a prerequisite to determining whether Locke is currently in violation of DR 5–103(a). If plaintiff ultimately prevails on that issue, it would then be too late to retroactively disqualify Locke.

The point, then, is not whether plaintiff or defendant is the actual owner of the equipment, but that Sauer and Locke *believe* that they are now the joint owners. It is not who "really" owns the equipment that creates a conflict of interest here, but the *perceived* ownership. If Locke believes that he is a one-third owner of the equipment, which his letter to Xerox certainly indicates that he does, it is that subjective belief that could affect his judgment in pursuing this action and in defending against Xerox's counterclaims. *See Bianchi v. Mille,* 698 N.Y.S.2d 545, 546 (2d Dep't 1999) ("It is well settled that an attorney must avoid not only the fact, but also the appearance of representing conflicting interests"); *Schmidt v. Magnetic Head Corp.,* 101 A.D.2d 268, 276, 476 N.Y.S.2d 151 (2d Dep't 1984) ("the [New York] Court of Appeals has noted that 'with rare and conditional exceptions, the lawyer may not place himself in a position where a conflicting interest may, even inadvertently, affect or give the appearance of affecting, the obligations of the professional relationship'" (citing *Matter of Kelly,* 23 N.Y.2d 368, 376, 296 N.Y.S.2d 937, 244 N.E.2d 456 (1968))).

Indeed, at page 9 of his memorandum submitted in opposition to defendant's motion to disqualify, plaintiff states that the July 14, 1999 letter from Sauer and Locke to Xerox did not run afoul of DR 7–104's proscription against directly communicating with a party because "Mr. Locke communicated in writing with Defendant not in his capacity as attorney for Plaintiff, but rather, as the *putative owner* of the Equipment." (Emphasis added.) Plaintiff cannot have it both ways, arguing that no DR 5–103 violation exists because Locke has no ownership interest in the equipment, but that Locke did not violate DR 7–104 because he sent the letter in his capacity as an owner, putative or otherwise.

While I therefore conclude that the Magistrate Judge correctly determined Locke to be in violation of DR 5–103(a), I am not convinced that disqualification is the best remedy. This action, which has been pending since 1995, is in its advanced stages, and forcing plaintiff to find new counsel at this point would further delay resolution of the remaining issues, as well as work some hardship upon plaintiff. Faced with a similar situation, the court in *Landsman v. Moss,* 180 A.D.2d 718, 720–21, 579 N.Y.S.2d 450 (2d Dep't 1992), though finding a violation of DR 5–103(a), stated:

> In view of the lengthy history of this action, we … conclude that it was improvident of the [lower] court to disqualify the plaintiff's counsel and direct her to retain new counsel. This would serve only to cause greater delay and expense to the plaintiff. Present counsel may continue to prosecute this action on the plaintiff's behalf under a new retainer agreement which shall not contain any similarly objectionable contingent fee provisions.

I believe that this course of action, rather than outright disqualification, would be the wisest one to take here as well. Accordingly, I will not disqualify Locke from continuing to represent plaintiff in this action, on condition that within twenty (20) days of entry of this Decision and Order, he divests himself completely of all interest in the property that is the subject of this lawsuit. If Locke fails or refuses to divest himself, then he is disqualified from acting as counsel.

I have reviewed the record concerning the allegations that Locke also violated

Disciplinary Rule 7–104. Even if there were a technical violation of that Rule, I decline to impose sanctions.

## CONCLUSION

Plaintiff's objections to the Report and Recommendation of Magistrate Judge Feldman issued on November 22, 1999 (Docket Item 282) are denied in part and granted in part. I concur with and adopt Magistrate Judge Feldman's finding that plaintiff's attorney, Gordon Locke, is in violation of DR 5–103(a), and plaintiff's objections to that finding are denied. The Report and Recommendation is modified, however, to the extent that it recommends that Locke be disqualified from further representation of plaintiff in this action. If Gordon Locke, Esq. intends to continue to act as counsel in this proceeding representing Fred Sauer, he is hereby ORDERED to divest himself of all interest in the property that is the subject of this lawsuit, within twenty (20) days of entry of this Decision and Order. Attorney Locke is further ORDERED to provide the Court with proof of this divestiture within seven (7) days of its occurrence. If Locke fails or refuses to divest himself of the property, then he is disqualified from acting as counsel.

IT IS SO ORDERED.